Nos. 2012-1474, -1475, -1476

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

EBAY INC. AND MICROSOFT CORPORATION,

*Plaintiffs-Appellees*,

and

CABELA'S INC.,

*Plaintiff-Appellee*,

v.

KELORA SYSTEMS, LLC,

*Defendant-Appellant.*

—————————————————————————————

KELORA SYSTEMS, LLC,

*Plaintiff-Appellant*,

v.

TARGET CORPORATION, AMAZON.COM, INC., OFFICE DEPOT, INC., COSTCO WHOLESALE CORPORATION, HEWLETT-PACKARD COMPANY, AUDIBLE, INC., and ZAPPOS.COM, INC.,

*Defendants-Appellees*,

and

DELL INC.,

*Defendant-Appellee*,

and

NEWEGG INC.

*Defendant-Appellee.*

Appeals from the United States District Court for the Northern District of California in consolidated case nos. 10-CV-4947, 11-CV-1398, and 11-CV-1548, Chief Judge Claudia Wilken

## BRIEF OF ALL APPELLEES

Theodore W. Chandler
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000


November 5, 2012

Constantine L. Trela, Jr.
Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000

*Counsel for Plaintiffs-Appellees*
*eBay Inc. and Microsoft Corporation*

Jeffrey L. Fillerup
MCKENNA LONG & ALDRIDGE LLP
Rincon Center II
121 Spear Street, Suite 200
San Francisco, California  94105
Telephone:  (415) 356-4600

Gregory P. Sitrick
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona  85004
Telephone:  (602) 229-5200

Christopher J. Fahy
QUARLES & BRADY LLP
300 N. LaSalle Street, Suite 4000
Chicago, Illinois  60654
Telephone:  (312) 715-5107

*Counsel for Plaintiff-Appellee
Cabela's Inc.*

Richard S. Zembek
Daniel S. Leventhal
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5151

Gilbert A. Greene
Sheila Kadura
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701
Telephone:  (512) 474-5201

Jonathan S. Franklin
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 662-0466

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:  (214) 855-8000

*Counsel for Defendants-Appellees
Target Corporation; Amazon.com, Inc.;
Office Depot, Inc.; Costco Wholesale
Corporation; Hewlett-Packard
Company; Audible, Inc.; and
Zappos.com, Inc.*

Kimball R. Anderson
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 558-5600

Joseph A. Micallef
Scott M. Border
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone:  (202) 736-8000

*Counsel for Defendant-Appellee
Dell Inc.*

Kent E. Baldauf, Jr.
Bryan P. Clark
Daniel H. Brean
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, Pennsylvania 15222
Telephone:  (412) 471-8815

*Counsel for Defendant-Appellee
Newegg Inc.*

**Form 9**

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

eBay Inc.                              v. Kelora Systems, LLC

No. 2012-1474, -1475, -1476

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
eBay Inc. _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.     The full name of every party or amicus represented by me is:
eBay Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:
Same

3.     All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:
None

4. ☐  The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:
See attachment.

July 6, 2012                          /s/ Theodore W. Chandler
Date                                  Signature of counsel

                                      Theodore W. Chandler
                                      Printed name of counsel

Please Note: All questions must be answered
cc: See attached Certificate of Service

124

ATTACHMENT TO CERTIFICATE OF INTEREST OF EBAY INC.

IN

eBay Inc. v. Kelora Systems, LLC, No. 2012-1474, -1475, -1476

Sidley Austin LLP
> Marc R. Ascolese (no longer with the firm)
> Richard A. Cederoth
> Theodore W. Chandler
> Aaron M. Farber (no longer with the firm)
> Sandra S. Fujiyama
> David T. Pritikin
> Constantine L. Trela, Jr.

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

eBay Inc. _____ v. Kelora Systems, LLC _____

No. 2012-1474, -1475, -1476 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Microsoft Corporation _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:
Microsoft Corporation

_____

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:
Same

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:
None

_____

4. ☐   The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:
See attachment A

_____

| July 6, 2012 | /s/ Theodore W. Chandler |
| Date | Signature of counsel |
| | Theodore W. Chandler |
| | Printed name of counsel |

Please Note: All questions must be answered
cc: See attached Certificate of Service _____

124

ATTACHMENT TO CERTIFICATE OF INTEREST OF MICROSOFT CORPORATION

IN

eBay Inc. v. Kelora Systems, LLC, No. 2012-1474, -1475, -1476

Microsoft Corporation
David E. Killough

Sidley Austin LLP
Marc R. Ascolese (no longer with the firm)
Richard A. Cederoth
Theodore W. Chandler
Aaron M. Farber (no longer with the firm)
Sandra S. Fujiyama
David T. Pritikin
Constantine L. Trela, Jr.

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

e-Bay, Inc. _____ v. Kelora Systems, LLC _____

No. 2012-1474, - 1475, - 1476

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:
Cabela's, Inc.

_____

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
Not Applicable

_____

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
None

_____

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
QUARLES & BRADY LLP, Gregory P. Sitrick, Christopher J. Fahy
McKENNA LONG & ALDRIDGE LLP, Jeffrey L. Fillerup

_____

9/8/12
_____                    _____
Date                                Signature of counsel

                                    Jeffrey L. Fillerup
                                    _____
                                    Printed name of counsel

Please Note: All questions must be answered
cc: All Counsel _____

124

Form 9

FORM 9.   Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

eBay, Inc. _____ v. Kelora Systems, LLC _____

No. 2012-1474, -1475, -1476

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Amazon.com, Inc., Audible, Inc., Costco Wholesale Corporation, Hewlett-Packard Company, Office Depot, Inc., Target Corporation,  Zappos.com, Inc.

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Amazon.com, Inc. owns 10 percent or more of Audible, Inc. and Zappos.com, Inc.

_____

4.  ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Dan Davison, Richard Zembek, Daniel Leventhal, Gilbert Greene, Robert Greeson, John O'Malley, Aaron Gopen, Jonathan Franklin, Fulbright & Jaworski L.L.P.

_____

6/27/12
_____                              _____
Date                                                      Signature of counsel

                                                         Jonathan S. Franklin
                                                         Printed name of counsel

Please Note: All questions must be answered
cc: All counsel _____

124

**Form 9**

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

eBay Inc. _____ v. Kelora Systems, LLC _____

No. 2012-1474, -1475, -1476

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Dell Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Dell Inc.

_____

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Same

_____

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

_____

4. ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See attachment A

_____

     July 6, 2012 _____       /s/ Joseph A. Micallef _____
           Date                        Signature of counsel

                                     Joseph A. Micallef _____
                                      Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

CERTIFICATE OF INTEREST

ATTACHMENT A

The names of all law firms and the partners or associates that appeared for Dell Inc. in U.S. District Court for the Northern District of California Case No. 4:11-cv-01548-CW or are expected to appear in this court are Sidley Austin LLP, Joseph A. Micallef, Scott M. Border, Michael R. Franzinger, Wonjoo Suh and Theodore W. Chandler of Sidley Austin LLP; and Kimball R. Anderson, Marlon E. Lutfiyya, Howard I. Shin, David S. Bloch and Kathleen Barry for Winston & Strawn LLP.

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

eBay Inc. _____  v. Kelora Systems, LLC _____

No. 2012-1474, -1475, -1476 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Newegg Inc. _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:

Newegg Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

None

4. ☐   The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

Kent E. Baldauf, Jr., Bryan P. Clark, Daniel H. Brean, James J. Bosco, Jr., The Webb Law Firm
Phillip F. Shinn, Fox Rothschild LLP; Jennifer L. Gregor, James D. Peterson Godfrey & Kahn, PC

July 6, 2012 _____          /s/ Kent E. Baldauf, Jr. _____
        Date                          Signature of counsel

                                 Kent E. Baldauf, Jr. _____
                                     Printed name of counsel

Please Note: All questions must be answered
cc: All Counsel _____

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES .................................................................. xx

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUES........................................................................ 1

STATEMENT OF THE CASE............................................................................ 1

STATEMENT OF FACTS ................................................................................. 3

    A.    The Patent-In-Suit ............................................................... 3

    B.    Parametric Search ............................................................... 5

    C.    The '821 Patent's "Local" Embodiment ............................ 12

    D.    The '821 Patent's Client/Server Embodiment ................... 13

    E.    The Prior *PartsRiver* Action .............................................. 15

    F.    The Reexamination............................................................. 17

    G.    Overview Of The Present Litigation ................................... 20

    H.    The District Court's Ruling ................................................ 20

SUMMARY OF THE ARGUMENT ................................................................. 23

ARGUMENT ................................................................................................... 26

I.    Standard Of Review........................................................................ 26

II.    The District Court Correctly Held The Asserted Claims Invalid Under Section 103. ................................................................................... 26

    A.    The District Court Correctly Determined That The Invention Of The Original Claims Is Prior Art When Analyzing The Reexamined Claims.......................................................... 26

        1.    The district court correctly held that Kelora is precluded from relitigating whether the subject of the 1992 offer for sale is prior art under Section 102(b)...................................... 27

2.     The district court correctly held that the subject of the Section 102(b) offer for sale is prior art for purposes of Section 103.............................................................................. 29

B.     The District Court Correctly Determined That The Amended Claims Are Obvious. ........................................................... 35

    1.     Level of ordinary skill in the art. ............................................. 36

    2.     The scope and content of the prior art. ................................... 37

        a.     The prior art includes all elements of the original claims. ........................................................................... 37

        b.     Client-server arrangements were well known to those skilled in the art. ................................................... 40

        c.     The Arnett reference sets forth the "resubmission" concept of the amended claims. ..................................... 41

    3.     The district court properly considered all differences between the claimed invention and the prior art. ..................... 45

    4.     Multiple motivations to combine the prior art stand unrebutted. ................................................................................ 46

    5.     The district court correctly rejected Kelora's reliance on secondary considerations. ....................................................... 48

III.    The Claims Are Also Invalid Under 35 U.S.C. § 305. ................................. 50

A.     Claims That Are Broadened During Reexamination Are Invalid Under Section 305 As A Matter Of Law. ........................................... 50

B.     The "Accepting" Step, As Properly Construed, Shows That The Asserted Claims Were Impermissibly Broadened During Reexamination. ..................................................................................... 52

IV.    The District Court's Claim Constructions Are Correct. ............................... 58

A.     The District Court Correctly Construed "Displaying." ..................... 59

B.     The District Court Correctly Construed "Resubmission To The Server." ............................................................................................ 62

CONCLUSION ............................................................................................... 63

# TABLE OF AUTHORITIES

## Cases

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) .................................................................36

*Anderson v. Int'l Eng'g & Mfg., Inc.*,
    160 F.3d 1345 (Fed. Cir. 1998) ................................................................52

*August Tech. Corp. v. Camtek, Ltd.*,
    655 F.3d 1278 (Fed. Cir. 2011) ................................................................33

*Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*,
    420 F.3d 1364 (Fed. Cir. 2005) ...............................................................58

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007) ......................................................... 21, 30

*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010) ...............................................................26

*eBay Inc. v. Kelora Sys., LLC*,
    No. 10-4947, 2012 WL 1835722 (N.D. Cal. May 21, 2012) ........................3

*eBay Inc. v. PartsRiver, Inc.*,
    No. 10-4947, 2011 WL 1754083 (N.D. Cal. May 9, 2011) ...........................3

*Hartley v. Mentor Corp.*,
    869 F.2d 1469 (Fed. Cir. 1989) ................................................................27

*In re Applied Materials, Inc.*,
    692 F.3d 1289 (Fed. Cir. 2012) ...............................................................40

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) .......................................................... 29, 51

*In re Fulton*,
    391 F.3d 1195 (Fed. Cir. 2004) ......................................................... 43, 44

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006) ........................................................46

*Int'l Nutrition Co. v. Horphag Research, Ltd.*,
    220 F.3d 1325 (Fed. Cir. 2000) .....................................................28

*Interconnect Planning Corp. v. Feil*,
    774 F.2d 1132 (Fed. Cir. 1985) .....................................................34

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
    787 F.2d 1577 (Fed. Cir. 1986) .....................................................38

*Jaffke v. Dunham*,
    352 U.S. 280 (1957) (per curiam)...................................................50

*King Pharms., Inc. v. Eon Labs, Inc.*,
    616 F.3d 1267 (Fed. Cir. 2010) .....................................................50

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)......................................................................46

*LaBounty Mfg. v. ITC*,
    958 F.2d 1066 (Fed. Cir. 1992) .....................................................21

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) .......................................... 32, 38, 44

*Media Techs. Licensing, LLC v. Upper Deck Co.*,
    596 F.3d 1334 (Fed. Cir. 2010) .....................................................49

*Mendenhall v. Barber-Greene Co.*,
    26 F.3d 1573 (Fed. Cir. 1994) ...................................................... xxi

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) .....................................................16

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) .....................................................56

*PartsRiver, Inc. v. Shopzilla, Inc.*,
    No. 09-811, 2009 WL 2591355 (N.D. Cal. Aug. 21, 2009).................. xx, 27

*PartsRiver, Inc. v. Shopzilla, Inc.*, No. 2009-1591,
    453 Fed. Appx. 963 (Fed. Cir. Nov. 3, 2010) (per curiam)...........................xx

*Pfaff v. Wells Elecs., Inc.*,
    124 F.3d 1429 (Fed. Cir. 1997),
    *aff'd*, 525 U.S. 55 (1998) .................................................. 24, 30, 31

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998)................................................................ 31, 32, 34

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
    544 F.3d 1298 (Fed. Cir. 2008) .............................................. 51, 53

*Quantum Corp. v. Rodime, PLC*,
    65 F.3d 1577 (Fed. Cir. 1995) ........................................ 26, 50, 51

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009) ....................................................36

*Sinorgchem Co. v. ITC*,
    511 F.3d 1132 (Fed. Cir. 2007) ....................................................58

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .............................................. 43, 50

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
    412 Fed. Appx. 270 (Fed. Cir. Jan. 10, 2011) (nonprecedential)..................57

*Syntex (U.S.A.) LLC v. Apotex, Inc.*,
    407 F.3d 1371 (Fed. Cir. 2005) ....................................................44

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*,
    192 F.3d 1353 (Fed Cir. 1999) ....................................................33

*Thermalloy, Inc., v. Aavid Eng'g, Inc.*,
    121 F.3d 691 (Fed. Cir. 1997) ....................................................50

*Tokai Corp. v. Easton Enters.*,
    632 F.3d 1358 (Fed. Cir. 2011) ...................................... 26, 48, 49

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ........................................................27

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997) .......................................................58

*V-Formation, Inc. v. Benetton Group SpA*,
401 F.3d 1307 (Fed. Cir. 2005) ......................................................57

*Westwood Chem., Inc. v. United States*,
525 F.2d 1367 (Ct. Cl. 1975).............................................. 28, 29

## Statutes

28 U.S.C. § 1295(a)(1) .......................................................................1

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1338(a) .............................................................................1

28 U.S.C. § 2201(a) .............................................................................1

35 U.S.C. § 102(a) .............................................................................42

35 U.S.C. § 102(b) ...................................................................... passim

35 U.S.C. § 103 .......................................................................... passim

35 U.S.C. § 301 .................................................................................17

35 U.S.C. § 302 .................................................................................17

35 U.S.C. § 305 .......................................................................... passim

## Other Authorities

Manual of Patent Examining Procedure § 2258(I)(B)
(8th ed., Rev. 7, July 2008)............................................................17

*Restatement (Second) of Judgments* § 43 (1982)....................................28

## STATEMENT OF RELATED CASES

The summary judgment of invalidity now before this Court relied, in part, on an earlier summary judgment ruling that the *original* claims of the '821 patent (before they were amended during reexamination in 2010) were invalid due to the on-sale bar of 35 U.S.C. § 102(b).  A3516–29 (*PartsRiver, Inc. v. Shopzilla, Inc.; Yahoo! Inc.; eBay Inc.; and Microsoft Corp.*, No. 09-811, 2009 WL 2591355 (N.D. Cal. Aug. 21, 2009)).  That earlier summary judgment of invalidity was appealed to this Court in 2009.  A4426–27.  The appeal was fully briefed, but shortly before oral argument, the patentee filed a motion to voluntarily dismiss its appeal and vacate the underlying judgment of invalidity because it had amended the claims during reexamination.  A4680–97.  This Court granted the motion to voluntarily dismiss the appeal and remanded for the district court to consider whether to vacate the judgment of invalidity.  A4804–08 (No. 2009-1591, 453 Fed. Appx. 963 (Fed. Cir. Nov. 3, 2010) (per curiam)).  On remand, the district court refused to vacate the judgment of invalidity because "PartsRiver,[1] by its own acts,

---

[1] When the appeal was filed, the '821 patent was owned by PartsRiver, Inc. During the appeal, the first-named inventor of the '821 patent (Sherif Danish) became the CEO of PartsRiver, *see* A4577, and caused PartsRiver to assign ownership of the patent to a new entity he created named Kelora Systems, LLC, *see* A4660–61 (Sept. 28, 2010), A4664–73 (Oct. 7, 2010).  Thus, by the time PartsRiver filed its motion to voluntarily dismiss its appeal, *see* A4680–97 (Oct. 15, 2010), Kelora owned the patent rather than PartsRiver, but nobody revealed the assignment to this Court or the appellees, and Kelora delayed recording the assignment until weeks later, *see* A3852(¶¶5–7), A4664.  PartsRiver was

*(Footnote continued)*

circumvented appellate review of the [c]ourt's judgment." A3590, A3595:2–3 (Apr. 21, 2011). That order was not appealed.

Two other district court actions seeking declarations that the asserted claims of the '821 patent are invalid have been stayed pending this appeal:

- *Adobe Sys. Inc. v. Kelora Sys., LLC*, No. 11-3938 (N.D. Cal. filed Aug. 10, 2011)

- *Baldor Elec. Co. v. Kelora Sys., LLC*, No. 11-2066 (E.D. Mo. filed Nov. 28, 2011)

If this Court affirms the judgment of invalidity, that ruling will also resolve these two district court actions. *See Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577–78 (Fed. Cir. 1994).

---

represented on appeal by the same lawyers that have represented Kelora throughout this litigation. *See generally* A3893–95 (timeline of events).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).  Final judgment was entered on May 23, 2012, *see* A1–2, and then amended by stipulation on June 5, 2012, *see* A7142–53, A3–4.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.  Whether the district court properly granted summary judgment that asserted claims 1–4 and 9 of U.S. Patent No. 6,275,821 are invalid for obviousness under 35 U.S.C. § 103(a).

2.  In the alternative, whether the asserted claims of the '821 patent are invalid under 35 U.S.C. § 305 in light of broadening amendments made to the "accepting" step during reexamination.

3.  If the judgment of invalidity is not affirmed, whether the district court properly construed the claim terms "displaying" and "resubmission to the server."

## STATEMENT OF THE CASE

eBay and Microsoft (which had previously been sued on the original '821 patent, before it was reexamined) commenced this litigation in the Northern District of California by filing a declaratory judgment action on November 2, 2010, the same day that the reexamination certificate for the '821 patent issued.

A4790–801, A4860–73 (10-4947 action).[2] *See generally* A3895 (timeline of events).

Soon after, Kelora sued several other companies in the Western District of Wisconsin accusing them of infringing the '821 patent.  A4812–17, A4848–54.  Kelora's action was transferred to the Northern District of California.  A2681, A2844–48 (11-1548 action).

Later, Cabela's also filed a declaratory judgment action against Kelora.  A1539–47 (11-1398 action).

Eventually all of the actions were assigned to Judge Wilken in the Northern District of California (who had handled the previous action invalidating original claims 1 and 2 of the '821 patent, before it was reexamined).  Kelora asserted claims 1–4 and 9 of the reexamined '821 patent in these actions.  A3809:3–11, A3819:20–3822:4.

On May 9, 2011, the district court granted summary judgment that amendments during reexamination substantively changed the scope of claims 1–4 and 9 of the '821 patent, thus precluding Kelora from recovering damages for any infringement before the reexamination certificate issued on November 2, 2010.

---

[2] eBay and Microsoft separately filed two additional actions against Kelora. *See* A4820–31, A4876–87 (10-5106 action); A4834–45, A4890–901 (10-5108 action).  These additional actions were later consolidated into the earlier 10-4947 action.  *See* A54:25–55:2.

*See* A45–55 (published at 2011 WL 1754083).  Kelora has not challenged this ruling.  The district court also denied without prejudice a motion seeking summary judgment that certain amendments during reexamination broadened the claims, thus invalidating them under 35 U.S.C. § 305.  *See* A53:3–54:12.

On May 21, 2012, the district court granted summary judgment that claims 1–4 and 9 are invalid as obvious under 35 U.S.C. § 103(a).  *See* A5–44 (published at 2012 WL 1835722).  Kelora challenges this ruling.  The district court did not reach the renewed alternative argument that those claims are also invalid under 35 U.S.C. § 305.  A43:22–44:6.

## STATEMENT OF FACTS

### A.    The Patent-In-Suit

The '821 patent is the third in a series of patents that claim priority from an application filed on October 14, 1994.  A163–205, A3118–26.  The named inventors are Sherif Danish and Kris Kimbrough.  A163.  The '821 patent is entitled "Method and System for Executing a Guided Parametric Search."  A163.  According to the '821 patent, prior-art methods of conducting electronic searches — including Boolean keyword searching and hierarchical searching — had various deficiencies.  A194–95(1:52–3:33).  The solution claimed by the '821 patent is a "guided search," sometimes called a "parametric search" or a "faceted search."

Reprinted below are claims 1 and 2 of the '821 patent as issued, before

reexamination:

> 1. A method for assisting a user in identifying a subfamily of items within a family of items, comprising the steps of:

> (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item,

> (b) reading said data file,

> (c) displaying a feature screen indicating said alternatives represented in the family,

> (d) accepting a first selection criteria of at least one alternative,

> (e) determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria,

> (f) determining available alternatives represented in the first subfamily,

> (g) revising said feature screen to indicate the available alternatives of the first subfamily,

> (h) accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen,

> (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria,

> (j) determining available alternatives represented in the second subfamily, and

(k) revising said feature screen to indicate the available alternatives of the second subfamily.

2. The method of claim 1 wherein each family has at least one feature associated therewith and further comprising the step of

displaying at least one grouping wherein each said grouping comprises one of said features visually related to respective alternatives.

A203(19:37–20:11).

## B.    Parametric Search

The screenshots below illustrate the concept of a "parametric search."  These screenshots were taken from a demonstration program[3] created in 1992 by Danish and Kimbrough that the district court in the prior action held to be a reduction to practice of original claims 1 and 2 of the '821 patent, reprinted above.  A3430, A3440:22–3442:2, A3516, A3526:9–21.  At the same time, the district court invalidated original claims 1 and 2 under 35 U.S.C. § 102(b) because it held that before the critical date, Danish had offered to sell a to-be-built software program embodying the parametric search concept found in this demonstration program. A3524:11–3525:16, A3528:10–14 (relying upon A4941–42, A4943, A4947). Accordingly, the screenshots below illustrate *both* the "parametric search" technique in the prior art *and* the method originally claimed by the '821 patent.

---

[3] A copy of this program is included in the record.  A3528:4–9, A4932(¶6), A4934–35 (CD-ROMs marked as Exs. Q–R), A3046:15–17, A3466–80.

For clarity, the 1992 program used to create the screenshots will be called the "Demo Software" throughout this brief.  Although the Demo Software was referenced in the offer for sale, it was not the subject of the offer for sale discussed by the district court, but rather was a *demonstration* of a different (and yet to be created) program that Danish was offering to sell, which will be called "AMP Navigator" throughout this brief.  A4941–42 (Phase 3), A4943 (offer price of $200,000), A4947 (Demo Software).  Kelora incorrectly conflates the to-be-built AMP Navigator software with the Demo Software.  A7122–25.

The Demo Software implemented "parametric search" to help a user find a particular part in an electronic catalog.  In the first screenshot below, which corresponds to steps (a) to (c) of original claim 1[4] and also meets the requirements of dependent claim 2,[5] a user interested in connectors with a "square flanged receptacle" clicks on the button for "Sq. Flanged Receptacle":

---

[4] "A method for assisting a user in identifying a subfamily of items within a family of items, comprising the steps of: (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, (b) reading said data file, (c) displaying a feature screen indicating said alternatives represented in the family . . . ."  A203(19:36–45).

[5] "The method of claim 1 wherein each family has at least one feature associated therewith and further comprising the step of displaying at least one grouping wherein each said grouping comprises one of said features visually related to respective alternatives."  A203(20:5–11).



4

A3471.  If the user changes his mind, he can reject (or "undo") the selection of

"square flanged receptacles" by clicking on the "Sq. Flanged Receptacle" button a

second time or by clicking on "Clear All."  *See supra* at 5 n.3.

Once the user is satisfied with the selection(s) he has made, he can accept his

selection(s), and initiate a search based on his selection(s), by clicking on the

"Search" button, which corresponds to step (d) of original claim 1:[6]

---

[6] ". . . (d) accepting a first selection criteria of at least one alternative . . . ."
A203(19:46–47).

**5**

A3472.

The third screenshot shows the results of the search, which corresponds to steps (e) to (g) of original claim 1:[7]



A3473.  As shown in this screenshot, 65 part numbers match the parameter "Sq. Flanged Receptacle."  This third screenshot also shows that the program grays-out parameters that can no longer be selected, such as "Solid Feedthrough" and "with Tetraseal."

The program allows for iterative searching using the technique.  In the fourth screenshot, the user further refines the search criteria by clicking on the button for "Metal":

---

[7] ". . . (e) determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, (f) determining available alternatives represented in the first subfamily, (g) revising said feature screen to indicate the available alternatives of the first subfamily . . . ."  A203(19:48–55).



7

A3474.

Once the user is satisfied with the additional selection(s) he has made, he can accept his selection(s), and initiate a second search based on his selection(s), by clicking on the "Search" button, which corresponds to step (h) of original claim 1:[8]

_____

[8] ". . . (h) accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen . . . ." A203(19:56–59).



8

A3475.

The sixth screenshot shows the results of the second search, which corresponds to steps (i) to (k) of original claim 1:[9]

---

[9] ". . . (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, (j) determining available alternatives represented in the second subfamily, and (k) revising said feature screen to indicate the available alternatives of the second subfamily." A203(19:60–20:4).



9

A3476.  As shown in this screenshot, now only 20 part numbers match *both*

parameters "Sq. Flanged Receptacle" *and* "Metal."  Additional parameters that can

no longer be selected, such as "Size 16 VDE (Series 1)," are grayed-out.

### C.    The '821 Patent's "Local" Embodiment

The '821 patent describes two embodiments.  A3517:18–21.  The first

embodiment, called the "local" embodiment, runs *entirely* on a standalone

computer; no other computer is involved.  A197(7:4–11).  The "local" embodiment

is almost identical to the Demo Software shown above.  *Compare* A197(7:1–9:9),

A170–72(figs. 7–9) (first embodiment of the '821 patent), *with* A3468–80

(screenshots from the Demo Software).  Reprinted below is Figure 8 of the patent

— showing the "feature screen" of the "local" embodiment — annotated with

some of the terms used in the claims and the column and line number in the patent

where each term is used:



A171.

### D.    The '821 Patent's Client/Server Embodiment

The second embodiment described in the '821 patent, called the "Internet

embodiment," involves a client computer connected to a server computer through a

network such as the Internet.  A202(18:10–19:35), A183–93(figs. 25–35).  In the

Internet embodiment (unlike the "local" embodiment), some steps are performed

by a "server" computer on the network, while other steps are performed on the

user's computer (the "client" computer). For example, the patent states that "[t]he

*client* 126 receives the feature screen status 127 and *displays* the updated feature

screen 9." A203(19:8–9).[10]

In all other respects, the two embodiments in the patent are nearly identical.

Indeed, the patent provides few details about the Internet embodiment, and instead

states that "the Internet embodiment of the electronic catalog application mirrors

the user flow in the local embodiment as much as possible." A202(18:32–34). In

particular, the disclosure for the Internet embodiment never explicitly mentions the

use of "resubmission," the feature Kelora has argued is critical to the non-

obviousness of the amended claims. A38:8–39:3 (citing A202(18:55–61)).

Reprinted below is Figure 28 — which shows the "feature screen" in the

Internet embodiment — annotated with some of the terms used in the claims and

the column and line number in the patent where each term is used. As can be seen,

the "feature screen" for the Internet embodiment is functionally very similar to the

"feature screen" for the local embodiment shown above (at p. 13).

---

[10] Unless stated otherwise, all emphasis in quotes throughout this brief has been added.



A186.

### E.    The Prior *PartsRiver* Action

The '821 patent was first asserted in 2007, prior to its reexamination. It was

owned at the time by PartsRiver, Inc. PartsRiver filed suit and asserted claims 1

and 2 against eBay, Microsoft, and five other companies with shopping websites.

A3990–4003, A4082–199. In response, the defendants filed a request with the

Patent Office for an *ex parte* reexamination of claims 1 and 2. A5700–13. Later,

in the district court action, the defendants moved for summary judgment of noninfringement and invalidity. A3430–65. The defendants argued that their websites could not infringe claims 1 and 2 because at least the "displaying," "accepting," and "revising" steps were performed on the *user*'s computers, not the defendants' servers, thus creating a "divided infringement" problem. A3436:11–15, A3446:5–14, A3448:4–3455:21 (citing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328–30 (Fed. Cir. 2008)). The defendants also argued that claims 1 and 2 were invalid under Section 102(b) in light of the 1992 offer for sale discussed above. A3440:22–3442:14, A3455:22–3459:24; *see also supra* at 5.

The district court held that claims 1 and 2 were invalid under Section 102(b) due to the on-sale bar and thus did not reach the question of divided infringement under *Muniauction*. A3528:10–21. Judgment was entered against PartsRiver on August 21, 2009. A3532. That judgment is final and no longer appealable because PartsRiver voluntarily dismissed its appeal to this Court. *See generally* A3893–95 (timeline of events), A4804–08 (dismissal). On April 21, 2011, the district court denied PartsRiver's subsequent motion to vacate the judgment because "PartsRiver, by its own acts, circumvented appellate review of the [c]ourt's judgment." A3590, A3595:2–3. The order denying vacatur was not appealed.

### F.    The Reexamination

While claims 1 and 2 of the '821 patent were being litigated in district court, the PTO was reexamining those claims. The PTO could not consider the offer for sale that the district court was considering because reexaminations are limited to prior art consisting of patents or printed publications. *See* Manual of Patent Examining Procedure (MPEP) § 2258(I)(B), at 2200-91 (8th ed., Rev. 7, July 2008); *see also* 35 U.S.C. §§ 301–302. Instead, the reexamination focused on a printed publication called Granacki.

The PTO repeatedly rejected original claims 1 and 2 in light of the Granacki reference. A5716–24, A5746–58 (relying upon A5643–45). As a result, PartsRiver *narrowed* claims 1–4 to overcome these rejections. A5884–92, A49:10–A53:2. In particular, PartsRiver (i) narrowed the preamble of claims 1–4 to encompass only a client-server embodiment, and (ii) narrowed step (h) to require the client to "resubmit" to the server both the first selection criteria and the second selection criteria. A5887. At the same time, PartsRiver added new claim 9, which is very similar to amended claim 1. A5888–90. In response, the PTO withdrew its prior-art rejection and allowed claims 1–4 and 9 as amended. A5896–901.

At the same time that PartsRiver narrowed claims 1–4 and 9 in certain respects to overcome the prior art, it also *broadened* them in other respects to try to

avoid the "divided infringement" argument that had been raised in the litigation. As noted above, the defendants had argued in the district court that their websites could not infringe original claims 1 and 2 because (among other reasons) the "accepting" step was performed on the *user*'s computers, not the defendants' servers. *See supra* at 16. In response, PartsRiver amended claim 1 during reexamination, and added claim 9, to change the "accepting" step from an action performed on the *user*'s computer to an action performed by the *server* computer, *see* A5887–89, thus removing the "divided infringement" problem with respect to the "accepting" step in claims 1–4 and 9. This amendment is the basis for the defendants' argument that the asserted claims are invalid under 35 U.S.C. § 305 because they cover a process that would not have infringed the original claims.

Reprinted below is the text of reexamined claims 1 and 9, with additions (as compared to original claim 1) shown by <u>underlining</u> and deletions shown by ~~strikethrough~~. *Compare* A203 (original claims), *with* A162 (reexamination certificate).

| Reexamined Claim 1 | Reexamined Claim 9 |
|---|---|
| 1. A method for assisting a user in identifying a subfamily of items within a family of items <u>said method performed with a server connected to a client computer through a computer network</u>, comprising the steps of: | 9. A method for assisting a user in identifying a subfamily of items within a family of items, <u>the method</u> comprising the <u>following</u> steps ~~of~~ <u>which are performed with a server connected to a computer network</u>: |
| (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, | (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, |

| **Reexamined Claim 1** | **Reexamined Claim 9** |
|---|---|
| (b)  reading said data file, | (b)  reading said data file, |
| (c)  displaying a feature screen indicating said alternatives represented in the family, | (c)  displaying a feature screen indicating said alternatives represented in the family, <u>wherein data is output to a client computer via said computer network,</u> |
| (d)  accepting a first selection criteria of at least one alternative, | (d)  <u>receiving and</u> accepting a first selection criteria of at least one alternative <u>from said client computer, said first selection criteria being received by said server from said client computer via said computer network,</u> |
| (e)  determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, | (e)  determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, |
| (f)  determining available alternatives represented in the first subfamily, | (f)  determining available alternatives represented in the first subfamily, |
| (g)  revising said feature screen to indicate the available alternatives of the first subfamily, | (g)  revising <u>said data for</u> said feature screen to indicate the available alternatives of the first subfamily <u>and outputting said revised data for said feature screen to said client computer via said computer network,</u> |
| (h)  accepting a second selection criteria ~~comprising~~ <u>from the client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of</u> the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h)  <u>receiving and</u> accepting a second selection criteria ~~comprising~~ <u>from said client computer via said computer network, in which said second selection criteria comprises (1) a resubmission by said client computer of</u> the alternative or alternatives of the first selection criteria ~~plus~~ <u>along with (2)</u> at least one alternative selected from the revised feature screen, |
| (i)  determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, | (i)  determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, |
| (j)  determining available alternatives represented in the second subfamily, and | (j)  determining available alternatives represented in the second subfamily, and |
| (k)  revising said feature screen to indicate the available alternatives of the second subfamily. | (k)  revising <u>said data for</u> said feature screen to indicate the available alternatives of the second subfamily <u>and outputting said revised data for said feature screen to said client computer via said computer network.</u> |

### G.    Overview Of The Present Litigation

While the '821 patent was being reexamined, Danish (the first-named inventor) became the CEO of PartsRiver, *see* A4577, and caused PartsRiver to assign the '821 patent to a new entity that he created called Kelora, *see* A4640–49, A4660–76.  Both Danish and his co-inventor Kimbrough have a stake in Kelora. A3543:7–9.

As discussed above, litigation over the reexamined patent began the same day the reexamination certificate issued.  *See supra* at 1.  After all the various actions were assigned to the same judge, all of the defendants in the related actions joined in a single motion for summary judgment of invalidity, A2965–3047, which was granted, A5–44.

### H.    The District Court's Ruling

The district court granted the defendants' motion for summary judgment of invalidity on the basis of obviousness.  A5–44.  The court did not reach the defendants' alternative argument that the claims are also invalid under 35 U.S.C. § 305 because they had been impermissibly broadened during reexamination. A43:22–44:6.

The court began by construing the terms "user," "server," "with a server," "displaying," and "resubmission."  A14:10–22:3.  On appeal, Kelora challenges only the constructions of "displaying" and "resubmission," and admits that its

"challenges to the district court's grant of summary judgment of obviousness do not turn on the district court's claim constructions." Br. 22. Appellees agree that the obviousness question does not turn on any of the district court's claim constructions. A2990:23–26.

Regarding obviousness, the district court held that its previous summary judgment ruling barred Kelora (as the successor-in-interest to PartsRiver) from disputing that AMP Navigator had been "on sale" under Section 102(b), and thus was also prior art for purposes of Section 103(a). A30:10–32:24. As the court explained, citing this Court's precedents, "'[p]rior art under the § 102(b) on-sale bar is also prior art for the purposes of obviousness under § 103,'" and "Section 102(b) may create a bar to patentability . . . in conjunction with [§ 103], if the claimed invention would have been obvious from the on-sale device in conjunction with the prior art." A30:23–31:5 (quoting *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007), and *LaBounty Mfg. v. ITC*, 958 F.2d 1066, 1071 (Fed. Cir. 1992)). The court reasoned that "[t]he prior invalidity finding placed the claimed features that were the subject of the offer for sale—claims one and two of the original '821 patent—into the prior art for the obviousness inquiry, along with the specific reduction-to-practice and unclaimed limitations that were contained in the AMP Navigator demonstration program [referred to in this brief as the Demo Software]." A31:28–32:5.

The court summarized its collateral estoppel holding as follows:

> This Court has already determined that the AMP Navigator demonstration program constituted a reduction to practice of the original claims and thus that all elements of the local embodiment of the original claims were obvious. Defendants are not required to re-litigate each of these, as Kelora urges, and AMP Navigator is prior art citable against the patent claims for obviousness purposes. Accordingly, Defendants may prove the obviousness of the current claims by showing that they would have been obvious from the combination of AMP Navigator, including the concept of parametric search, with other prior art . . . .

A32:14–24.

Given that every element of the original, unamended claims was in the prior art, the court had no difficulty determining that the reexamined claims were obvious, notwithstanding the changes made during the reexamination. As the court noted, it was undisputed that "the only differences between the original and re-examined claims are the requirement of the client-server arrangement and the resubmission requirement for iterative searching." A32:25–33:6. The court held that it was undisputed that client-server arrangements were taught in the prior art, A33:7–35:18, and that "resubmission" was taught in the prior art as the solution to the fact that servers on the Internet are "stateless," meaning they do not store the results of previous searches, A35:19–39:27. The court also held that there was a motivation to combine the prior art references in the manner claimed in reexamined claims 1 and 9. A40:1–41:24.

The district court considered Kelora's evidence of secondary considerations of non-obviousness, which consisted primarily of a declaration by Danish on commercial success.  A42:17–28 (citing A6057–61).  The court found that evidence insufficient because "Kelora points to no evidence that suggests commercial success due to elements not in the prior art," and held that even giving this evidence weight, it could not overcome the strong showing of obviousness.  A43:2–10.  Accordingly, the court held claims 1 and 9 invalid as obvious.  The court also held dependent claims 2–4 invalid because Kelora did not dispute that if independent claim 1 is obvious, then so are claims 2–4.  A2991:1–12, A3003:23–3007:27, A6428:9–14, A43:11–21.

## SUMMARY OF THE ARGUMENT

In its 2009 decision, the district court held that Danish's 1992 offer for sale to AMP anticipated original claims 1 and 2 of the '821 patent under Section 102(b).  That means that the subject matter of those claims is part of the prior art.  Kelora's predecessor abandoned its appeal of the 2009 judgment; the district court refused to vacate that judgment; that decision was never challenged; and the judgment now is binding on Kelora and precludes it from relitigating the issues decided in 2009.

Kelora does not dispute any of this.  Instead, it argues that notwithstanding the preclusive judgment, the Section 102(b) offer is not prior art for purposes of

Section 103. Kelora views a Section 102(b) offer for sale as relevant only to anticipation, and asserts that it is thus illogical for the district court to hold that an invention first conceived in 1994 could have been "on sale" at the time of the offer in 1992. Kelora is wrong as a matter of law. As the Supreme Court and this Court made clear in *Pfaff*, among other cases, the subject matter of a Section 102(b) offer for sale is part of the prior art for all purposes, including obviousness under Section 103. The subject of the 1992 offer for sale — which was held to embody all elements of the original claims — therefore is indisputably prior art to the reexamined claims.

Kelora also argues that the district court, in analyzing the trivial differences between this Section 102(b) art and the reexamined claims — a client/server arrangement and resubmission — improperly used hindsight, ignored a supposed "teaching away," misunderstood the level of ordinary skill, and ignored secondary considerations. Kelora is wrong here as well. It misunderstands what it means to "teach away," failing to recognize that the disclosure of alternative approaches does not teach away. It also overlooks that the person of ordinary skill is not a particular, real world individual — such as the computer science students on which its expert relied — but rather a hypothetical individual who has at his fingertips all of the knowledge in the field at the time. Kelora's remaining arguments that the district court ignored its evidence simply misrepresent the court's analysis. The

court expressly considered all of Kelora's evidence and properly concluded that, even accepting it as true and drawing all reasonable inferences in Kelora's favor, no genuine issues of material fact remained to be tried.

The asserted claims are also invalid under Section 305. Claims that are broadened in *any* respect during reexamination are invalid, and a claim is broader for these purposes if it covers any conceivable device or process which would not have infringed the original claims. Here, claims 1–4 and 9 are broader than the original claims because the step of "accepting a second selection criteria" was changed during reexamination from a step performed by the user on a client computer to a step performed by the server. In other words, an operation that would not have infringed the original claims will infringe the new claims. These claims are therefore broader, and invalid as a matter of law.

Finally, Kelora disputes certain of the district court's claim construction rulings, even though it acknowledges that they have no effect on the invalidity analysis. Because the district court correctly held the claims invalid, this Court need not consider Kelora's claim construction arguments. In any event, the district court's constructions of "displaying" and "resubmission to the server" are fully consistent with the intrinsic evidence, while Kelora's proposed constructions are not.

The judgment should be affirmed.

# ARGUMENT

## I.  Standard Of Review

"Whether an invention would have been obvious at the time it was made is a question of law, which we review *de novo* . . . .  When the facts underlying an obviousness determination are not in dispute, we review whether summary judgment of invalidity is correct by applying the law to the undisputed facts." *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011).

Whether claims have been broadened during reexamination, and thus are invalid under Section 305, is "a question of law subject to complete and independent review on appeal."  *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995).

"[C]laim construction is likewise a matter of law and is reviewed without deference."  *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1344 (Fed. Cir. 2010).

## II.  The District Court Correctly Held The Asserted Claims Invalid Under Section 103.

### A.  The District Court Correctly Determined That The Invention Of The Original Claims Is Prior Art When Analyzing The Reexamined Claims.

The district court determined that the invention of original claims 1 and 2, which was the subject of the 1992 offer for sale, was Section 102(b) prior art for purposes of obviousness.  Kelora challenges this ruling on appeal, *see* Br. 29–36,

but the district court thoroughly addressed and properly rejected all of Kelora's arguments, *see* A30:9–33:6.

> **1.    The district court correctly held that Kelora is precluded from relitigating whether the subject of the 1992 offer for sale is prior art under Section 102(b).**

First, Kelora attempts to relitigate issues that were conclusively decided by the 2009 summary judgment ruling in the *PartsRiver* case.  *See* Br. 32–36; *see also* A2991:13–2993:14, A5985:7–24, A6415:11–6416:20.  That ruling determined that the invention claimed by original claims 1 and 2 was in the prior art under Section 102(b).  A3523:8–3528:14.  The district court in this case correctly held that "Defendants are not required to re-litigate" this issue.  A32:17–18.

The doctrine of collateral estoppel prevents Kelora from relitigating issues actually litigated and decided in the *PartsRiver* case.  *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (providing test for collateral estoppel); *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1471 n.1 (Fed. Cir. 1989) (applying Ninth Circuit law and affirming that prior summary judgment of invalidity due to the on-sale bar precluded relitigation of the same issues).

In response, Kelora argues that the district court erroneously applied the first prong of the Ninth Circuit's collateral estoppel standard — *i.e.*, whether "the issue necessarily decided at the previous proceeding is *identical* to the one which is

sought to be relitigated." Br. 34.[11]  According to Kelora, "the reexamined claims

did not exist at the time of the prior litigation," Br. 34, and thus "no issue regarding

their alleged obviousness was litigated or decided at the time of the prior

anticipation ruling regarding the original claims," Br. 35; *see also* Br. 32–33.

Kelora misses the point.  The district court did *not* preclude Kelora from

defending the non-obviousness of the reexamined claims.  Rather, it held that

Kelora could not relitigate particular *issues* decided in the prior case, including the

critical determination that the subject matter of original claims 1 and 2 was offered

for sale and therefore prior art under Section 102(b):  "Defendants are not required

to re-litigate [the issues previously decided], as Kelora urges, and AMP Navigator

is prior art citable against the patent claims for obviousness purposes."  A32:17–

20.

---

[11] Kelora does not dispute that the other prongs of the collateral estoppel test are present: "(2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Br. 34.  The second prong is satisfied because the 2009 summary judgment was final and PartsRiver's motion to vacate that final judgment was denied (and that order was never appealed). *See supra* at 15–16. The third prong is satisfied because Kelora does not dispute that as the successor-in-interest to PartsRiver's patent, it is bound by the prior judgment. A30:21–22. "[A] judgment with respect to a particular property interest may be binding on a third party based on a transfer of the property in issue to the third party after judgment." *Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000) (citing *Restatement (Second) of Judgments* § 43 (1982)); *see also, e.g.*, *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1370 n.5 (Ct. Cl. 1975) (applying collateral estoppel of invalidity against assignee).

It does not matter that the previous action involved the original claims while this litigation involves the reexamined claims. "[I]ssue preclusion . . . does not include any requirement that the *claim* (or cause of action) in the first and second suits be the *same*." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (applying collateral estoppel in the context of reexamined claims). "It is the *issues* litigated, not the specific claims around which the issues were framed, that is determinative." *Westwood Chem.*, 525 F.2d at 1372.

> ### 2. The district court correctly held that the subject of the Section 102(b) offer for sale is prior art for purposes of Section 103.

Kelora also argues that even if the subject of the offer for sale was prior art under Section 102(b) with respect to the *original* claims, it is not prior art for purposes of Section 103 against the *reexamined* claims. Br. 29–32. In particular, Kelora argues:

> The offer to sell cited by the district court took place in March 1992, long before conception of the inventions of the reexamined claims [in 1994]. The district court's reliance on an on-sale bar [in 1992] before the inventions of the reexamined claims were conceived [in 1994] is error that independently requires reversal of summary judgment.

Br. 31–32 (citations omitted). The district court properly rejected this argument. A30:9–32:24.

Kelora's argument is inconsistent with 35 U.S.C. § 103(a), which provides that obviousness is judged "at the time the invention was made," which Kelora admits was 1994, *see* Br. 31. Thus, anything in the art before 1994 — including the 1992 offer for sale — is prior art relevant to whether the reexamined claims would have been obvious under Section 103(a): "Prior art under the § 102(b) on-sale bar is *also* prior art for the purposes of obviousness under § 103" and thus can be combined with "*any other* relevant prior art." *Dippin' Dots*, 476 F.3d at 1344 (affirming judgment of invalidity).

Where, as here, there has been an invalidity finding under the on-sale bar, Section 103 precludes issuance of a claim if "'the subject matter of the sale or offer to sell . . . would have rendered the claimed invention obvious by its addition to the prior art.' In effect, what was offered for sale before the critical date becomes 'a [prior art] reference under section 103 against the claimed invention.'" *Pfaff v. Wells Elecs., Inc.*, 124 F.3d 1429, 1436 (Fed. Cir. 1997) (citations omitted), *aff'd*, 525 U.S. 55, 60 (1998). For example, a patent challenger may prove that a claim is invalid as obvious based on an offer for sale disclosing four out of five elements of a claim combined with a prior art publication disclosing the fifth element. In that example, the court would determine (1) whether the offer for sale was a commercial offer for sale of those four elements, and (2) whether those four elements were ready for patenting at the time of the offer. There is no requirement

that the fifth element, which no party asserts was part of the offer for sale, was also ready for patenting when the offer was made. Rather, the claimed invention will be invalid under Section 103 if the invention as a whole, including the fifth element, would have been obvious in light of the prior art offer for sale combined with the other prior art.

The district court's analysis was entirely faithful to this Court's precedents. For example, in *Pfaff*, this Court found dependent claims 11 and 19 invalid under the "§ 102(b)/103 bar" in light of an offer for sale encompassing the inventions of claims 1, 6, 7, and 10, in combination with another patent disclosing a "barb" limitation. *See* 124 F.3d at 1435–37. This Court specifically noted that "[t]he barb is the only element arguably missing from what was offered for sale," *id.* at 1437, and did not, as Kelora argues, require that there had been a conception and reduction to practice of that "barb" element before the critical date, because the Court was not relying on the offer for sale as evidence that the "barb" element was in the prior art. On appeal, the Supreme Court endorsed this Court's analysis: "[T]he Court of Appeals concluded as a matter of law that the additional feature was not itself patentable because it was an obvious addition to the prior art. Given the court's § 102(b) holding, the prior art included Pfaff's first four claims." 525 U.S. at 60 (footnote omitted).

Likewise, in *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1569–70 (Fed. Cir. 1997), this Court affirmed summary judgment of obviousness based on a Section 102(b) public use in 1970 combined with a patent issued in 1982.  Once again, when assessing whether the "invention" was in public use, this Court focused only on the elements that the public use allegedly disclosed:  "[I]t is the claims that define a patented invention. . . . [The] public use of the high-level aspects of the SABRE system was enough to place the *claimed* features of the [patent-in-suit] in the public's possession."  *Id.* at 1570.  The district court's holding in this case was no different:  it combined a Section 102(b) offer for sale in 1992 — two years before the date of the claimed invention — with other prior art, including a publication from 1994.  A7:15–19, A29:1.

Kelora argues that the district court erred because neither *Pfaff* nor *Lockwood* supports "the erroneous principle that a holding of anticipation under Section 102(b) converts the invalidated claim into prior art."  Br. 37.  But that is precisely what the Supreme Court said in *Pfaff*:  "Given the court's § 102(b) holding, the prior art included Pfaff's first four claims."  525 U.S. at 60.  And in any event the district court did not simply convert the original claims into prior art, but instead held that the offer for sale placed "all elements of the local embodiment of the original claims" in the prior art.  A32:16–17.

Kelora's reliance on *August Technology Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1289 (Fed. Cir. 2011), is similarly misplaced. *See* Br. 30–31. In *August*, the issue was whether a reference called "NSX-80" was in the prior art as a Section 102(b) offer for sale. *See id.* at 1288. Kelora cites a statement by this Court that "there is no offer for sale until such time as *the invention* is conceived." *August*, 655 F.3d at 1289. But "the invention" to which the Court was referring was the *prior art* invention (*e.g.*, the NSX-80 or, in this case, the invention of *original* claims 1 and 2 that was offered for sale in 1992), not the *claimed* invention of the patent-in-suit (*e.g.*, reexamined claims 1 and 9, which were not conceived until 1994). In *August*, the jury found that NSX-80 was *not* in the prior art, but this Court disagreed and held that it *could have been* in the prior art as a Section 102(b) offer for sale. *See id.* at 1290. However, this Court did not remand because it held that even if the NSX-80 were in the prior art, it would not make the asserted claims obvious when combined with the other prior art. *See id.* Thus, *August* confirms that prior art under Section 102(b) can be used to find a claim obvious under Section 103, contrary to Kelora's theory that "[t]he district court's reliance on an on-sale bar [in 1992] before the inventions of the reexamined claims were conceived [in 1994] is error," Br. 31–32.[12]

---

[12] Kelora also cites *Tec Air, Inc. v. Denso Manufacturing Michigan Inc.*, 192 F.3d 1353, 1358 (Fed Cir. 1999). *See* Br. 31. But in that case the defendant was

*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132 (Fed. Cir. 1985), is also distinguishable. *See* Br. 35–36. That case has nothing to do with the on-sale bar. The original claims in that case were found obvious in light of third-party publications by Bell Labs and others. *See* 774 F.2d at 1134. The patentee then submitted those third-party publications to the Patent Office as part of a reissue proceeding, amended its claims to overcome those references, and obtained a reissued patent. *Id.* at 1134–35, 1139–40. The district court found the new claims obvious based on collateral estoppel. *See id.* at 1140. This Court reversed and held that the district court erred by using the original claims as prior art against the new claims, instead of comparing the prior art publications to the new claims as a whole. *See id.* at 1141–42. Also, this Court held that the district court erred by failing to identify a motivation to combine, *id.* at 1143, and by failing to address the secondary considerations of non-obviousness, *id.* at 1144.

In this case, by way of contrast, the prior art was the inventor's own original invention (not a third-party publication), which he had offered to sell more than one year before the patent application, and thus the scope of this prior art was the same as the scope of the original claims. *See, e.g.*, *Pfaff*, 525 U.S. at 60 ("Given the court's § 102(b) holding, the prior art included Pfaff's first four claims.").

---

not asserting obviousness, *see* 192 F.3d at 1358 ("Denso does not argue that it would have rendered the invention obvious"), so the case is not relevant to

*(Footnote continued)*

Furthermore, the district court in this case did not invalidate the new claims simply because it had invalidated the original claims, but instead held that its previous Section 102(b) decision meant that the subject of the offer for sale was prior art just like any other prior art reference.  A32:17–24.  The district court then used that prior art in a complete Section 103 analysis that addressed motivation to combine and secondary considerations of non-obviousness.  A26:10–43:10.

### B.     The District Court Correctly Determined That The Amended Claims Are Obvious.

The district court correctly held the amended claims invalid under Section 103.  The court held that the prior art included the offered-for-sale software encompassing all elements of original claims 1 and 2, as well as publications describing the additional elements of client-server arrangements and resubmission.  A30:9–39:27.  The court also held that one of ordinary skill in the art at the time of the invention would have been motivated to adapt the subject of the earlier offer for sale to include client-server arrangements and resubmission, A40:1–41:24, and that this combination demonstrated a strong case of obviousness that was not overcome by evidence of secondary considerations, A42:17–43:10.

The district court carefully analyzed each required factor before correctly concluding that the asserted claims are obvious.  In doing so, the court properly

---

Kelora's arguments about Section 102(b)/103.

rejected each of Kelora's alleged fact disputes because Kelora's arguments were wrong as a matter of law and contradicted by the undisputed evidence.  A26:10–43:21.

### 1.    Level of ordinary skill in the art.

The level of ordinary skill in the art is not in dispute.  Indeed, the district court adopted Kelora's proposed level of ordinary skill.  A26:11–21.

Kelora tries to generate a factual dispute by applying this level of skill in a legally erroneous manner.  Specifically, Kelora argues that implementing a Web version of AMP Navigator "[w]ould [h]ave [b]een [b]eyond a POSITA's [t]echnical [g]rasp" and, in support, relies upon anecdotal accounts of a professor's observations of her students and those students' incomplete knowledge of Web design.  Br. 18–19.  But the proper *legal* framework for the obviousness inquiry assumes that "a *hypothetical* person of ordinary skill in the field [is] *attributed knowledge of the relevant prior art.*"  *Rothman v. Target Corp.*, 556 F.3d 1310, 1318 (Fed. Cir. 2009); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1364 (Fed. Cir. 2001) ("Whatever Dr. Lockwood did or did not *personally* realize at the time based on his actual knowledge is irrelevant.").  As discussed below, Kelora does not contest that all necessary Web programming documentation — as identified by Appellees' expert, Dr. Larson — was available in the prior art.  *See infra* at 40–41.  Thus, Kelora raises no genuine factual issue,

because one of ordinary skill is deemed to have access to all knowledge in the prior art.

### 2.    The scope and content of the prior art.

#### a.    The prior art includes all elements of the original claims.

Beyond its erroneous arguments regarding collateral estoppel, *see supra* at 26–35, Kelora does not contest, and the district court correctly held, that the to-be-built AMP Navigator software that was offered for sale in 1992 included all elements of original claims 1 and 2 of the '821 patent.  A31:28–32:5.  Indeed, under Section 102(b), those claims were invalidated in the prior case precisely because "the invention" they claimed "was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  Thus, the scope and content of the prior art included the subject matter of original claims 1 and 2.

Contrary to Kelora's arguments, the district court did not rely upon the specific source code in the Demo Software in its obviousness analysis.  Instead, the court relied upon the offer to sell the to-be-built AMP Navigator program, which was described in the offer for sale in terms of its *functional* abilities:

> The ability to locate a part number by selecting product features in any order.  Each time a feature is selected, the list of other selectable features is narrowed down to reflect only those remaining selectable features.  A demo of this approach is available at Danish International.

A4941, quoted by the court at A3519:11–16.

This description does not require any particular software code or implementation details, and certainly not the Demo Software. *See* A4941–42. The proposal defines the subject of the offer for sale as software to be built in the future and makes clear that this was different than the Demo Software, which was merely a "demo of this approach." A3519:11–18 (quoting A4941).[13]  Indeed, both inventors confirmed in affidavits to the Patent Office that the Demo Software was a "simple hardcoded demonstration" and that there was "additional development work necessary" to create a more "generalized" structure. A5566(¶6), A5571–72(¶13).  Thus, the proposal itself does not suggest using any specific software, and the inventors admit that they never intended to re-use the Demo Software in the to-be-built AMP Navigator that was the subject of the offer for sale. *See id.*

The district court's obviousness determination therefore properly relied on the offer to sell the to-be-built AMP Navigator, and correctly held that Kelora's arguments focusing on the Demo Software "are irrelevant" because

> [t]he prior invalidity finding placed the claimed features
> that were subject of the offer for sale — claims one and

---

[13] Because "AMP did not accept the Navigator proposal," A3519:20–22, the program that Danish had offered to sell was not actually created before the critical date.  But the offer for sale is still prior art because "there is no requirement for an enablement-type inquiry" for on-sale bar prior art. *Lockwood*, 107 F.3d at 1570. The offer for sale simply must relate to "a device that *embodies* the invention." *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1583 (Fed. Cir. 1986).

> two of the original '821 patent — into the prior art for the obviousness inquiry, along with the specific reduction-to-practice and unclaimed limitations that were contained in the AMP Navigator demonstration program.

A31:28–32:5. Kelora, however, continues to focus without explanation on the Demo Software. *See, e.g.*, Br. 47. It even goes so far as to misleadingly define the term "AMP Navigator" to mean "AMP Navigator *demonstration program*," *id.* at x (Table of Abbreviations), even though the district court made clear that the two terms are *not* interchangeable, A7122–25.

At their core, all of Kelora's alleged factual disputes concerning "AMP Navigator" rely on specific unclaimed features of the *Demo Software* and are thus irrelevant. Specifically, Kelora repeatedly argues that AMP Navigator "teaches away," *see, e.g.*, Br. 12–13, 24, 39, 41–43, 47, because the unclaimed implementation details of the *Demo Software* would allegedly make it difficult to adapt that *Demo Software* to a client-server arrangement with resubmission. *See, e.g.*, Br. 41 ("Kelora submitted evidence *based on the source code of AMP Navigator* [*i.e.*, the Demo Software] showing that AMP Navigator [*i.e.*, the Demo Software] precluded resubmission and would not have worked for its intended purpose in combination with resubmission."). Even if true, this argument is irrelevant. It was the to-be-built AMP Navigator, *not* the Demo Software, that was offered for sale, and the prior judgment established that the subject matter of the offer encompassed all elements of the original asserted claims. Thus, any alleged

difficulties in adapting the Demo Software are irrelevant to the combination of prior art that invalidated the claims. *See, e.g.*, *In re Applied Materials, Inc.*, 692 F.3d 1289, 1298 (Fed. Cir. 2012) (one of ordinary skill in the art "is not foreclosed" from combining the useful features of two prior art references merely because other features taught by the references are less useful).

### b. Client-server arrangements were well known to those skilled in the art.

Kelora does not contest any of Appellees' evidence regarding the state of the art of client-server (including Web client-server) arrangements and the known and available ways to implement those technologies. Br. 10 & n.3. Kelora also does not contest the district court's determination "that client-server systems were known at the time of invention to people of ordinary skill in the art, were obvious to try and were taught by prior art." A35:16–18. As one specific example, the court noted that Kelora and its expert did not dispute that Japanese Laid Open Patent Application No. 564-1030 ("Suzuki"), combined with AMP Navigator, "teach the combination of the local search process contained in the original claim one with the use of a database on a remote server . . . ." A33:16–34:7. The district court further found it uncontested that a skilled artisan would have been motivated to adapt a client-server arrangement to the Web, and Kelora's expert "does not challenge this basic motivation." A41:8–13.

Moreover, Appellees' expert, Dr. Larson, demonstrated, and Kelora does not contest, that at the time of the invention (1) stateless servers, their properties, and the use of resubmission with stateless servers to perform iterative searches were well known, A6884(¶¶26–28); (2) use of resubmission on stateless servers, for example Sun NFS servers, was well known, A6884(¶27); (3) the fact that Web servers were stateless was well known, A6887(¶35); and (4) there were multiple known ways to implement resubmission in a Web browser (*i.e.*, instruct the Web browser to return to the server previous parameters along with newly-selected parameters), including using forms with hidden input fields and embedding parameters in a URL, A6889–91(¶¶45–47).

### c. The Arnett reference sets forth the "resubmission" concept of the amended claims.

In May 1994, Nick Arnett distributed a posting through the WWW-Talk listserve[14] discussing resubmission in the context of iterative searches using a

---

[14] The WWW-Talk listserve was well known among persons of ordinary skill at the time. A6892(¶¶53–54) (expert declaration). For example, a March 1993 book, Internet Passport, directs its readers to sign up for the WWW-Talk listserve for more information about the World Wide Web and describes the list as "[d]iscussion among W3 developers (A good place for W3 users to share experiences and ask questions about W3 not addressed in the W3 online information.)" A5204, A5217. Postings to the WWW-Talk listserve were immediately distributed to all members of the WWW-Talk listserve, and were also made available to the public through web-based archives. A6559–60(¶¶4–7), A6537–50.

stateless Web server.  A6560(¶8), A6565–66.  Arnett submitted a declaration

confirming the authenticity of his posting and its distribution.  A6559–61.  In the

posting, Arnett first identified the problem — maintaining information during

multiple related searches using a "stateless" Web server that does not retain

submitted information — and explicitly identified resubmission as a solution:

> I'm working on an application that would take advantage
> of this sort of capability, but I don't think it requires
> abandonment of statelessness.  My experience so far tells
> me that when the user wants to perform multiple queries
> and transfers, it's because they are somehow related to
> one another.  *I'm attacking that problem by passing
> parameters, which are kept by the \*browser\* and re-
> sent.*  I see the need for improvement of the browsers'
> ability to keep track of queries and such, based on
> interaction, rather than a need to change the servers'
> capabilities in that area.
>
> *  *  *
>
> *There's no reason that the subsequent query can't pass
> back to the server a set of parameters that describes the
> previous search results, to which new narrowing or
> widening parameters can be added.*

A6560(¶8), A6565–66.

Kelora did not contest before the district court, and does not contest now,

that the Arnett posting is prior art as a printed publication under Section 102(a),

nor does Kelora renew in this Court its unsuccessful attempt before the district

court to swear behind the posting date. *See, e.g.*, Br. 10.[15]  Indeed, Kelora's expert, Mr. Gafford, conceded that Arnett disclosed "that one way to implement the searching is to send the results of prior searches to the server." A7006(¶33).  Thus, Arnett is prior art that clearly sets forth the client-server and resubmission elements that are the only differences between the amended claims and the elements of the original claims (which are in the prior art).

Kelora nevertheless argues that Arnett actually "teaches away" from use of resubmission because "stateful solutions were also advocated by others" and because "Arnett almost immediately acknowledges disadvantages of his own proposal, saying 'as I think about this, I can imagine that eventually the results might become quite complex, using up a lot of bandwidth to pass.'" Br. 15–16 (citing A4919, A4926).  But these comments fall well short of the *legal* definition of "teaching away."  As this Court has explained, "mere disclosure of alternative designs does not teach away." *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). The fact that Arnett acknowledged the existence of stateful servers does not change

---

[15] Kelora states in passing that it disputes whether Arnett is prior art, but never actually sets forth any argument, *see* Br. 10, thus waiving the issue, *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319–20 (Fed. Cir. 2006).  In the district court, Kelora attempted to swear behind Arnett, but the court correctly concluded that Kelora's attempt failed as a matter of law because "inventor testimony alone is insufficient to establish a conception date." A28:14–30:8.

the fact that Arnett also set forth the exact process of resubmission contained in the amended claims.

Moreover, "[a] statement that a particular combination is not a preferred embodiment does not teach away absent clear discouragement of that combination." *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1380 (Fed. Cir. 2005) (citing *In re Fulton*, 391 F.3d at 1199–1200). Here, all Kelora's expert could say is that Arnett "would not teach that Resubmission is desirable, much less that [it] is required." Br. 17 (quoting A7006(¶33)). Kelora's expert never opined that Arnett clearly discouraged the use of resubmission, as would be required to raise a question of teaching away.

Next, Kelora argues that Arnett "is not enabling" because it does not disclose sufficient details about how to implement resubmission. Br. 16 (quoting A6069(¶23)). The district court correctly rejected this argument, for two reasons. First, "Arnett provides the same level of detail as the specification of the '821 patent itself does regarding how resubmission is performed." A38:13–39:13 (citing *Lockwood*, 107 F.3d at 1570 (rejecting patentee's arguments where the "patent itself does not disclose the level of detail that [the patentee] would have us require of the prior art")). Kelora does not contest this finding. Second, Dr. Larson set forth evidence — which Kelora does not dispute — demonstrating that there were multiple known ways to instruct a Web browser to return to the server

previous parameters along with newly-selected parameters, including using forms with hidden input fields and embedding parameters in a URL. A6889–91(¶¶45–47). Thus, even assuming Arnett itself did not contain sufficient details, whatever details it did not include were undisputedly in the prior art.

### 3. The district court properly considered all differences between the claimed invention and the prior art.

The district court properly compared the claims at issue to the prior art. As explained above, it began with the prior holding that the AMP Navigator prior art encompassed all elements of original claims 1 and 2. A31:28–32:5. The court then compared that prior art to the asserted claims to identify any differences. A32:25–33:6. In doing so, it took into account the positions of both parties on this issue. The court first noted that Appellees identified two differences between the AMP Navigator prior art and the amended claims: "the requirement of the client-server arrangement and the resubmission requirement for iterative searching." *Id.* But contrary to Kelora's assertion, the court did not simply "adopt[] Defendants' contention." Br. 50. Rather, the court considered Kelora's position and noted that *Kelora identified the same two differences and no others.* The court stated that "Kelora's expert witness, Mr. Gafford, also identifies these as the two specific items that the AMP Navigator prior art does not teach, and which are contained in the re-examined '821 patent." A33:1–6 (citing A6072–74(¶¶34–39), A6615:4–9).

Kelora now argues that the district court erred by saying that its expert identified only these two differences between the claims and the prior art. Br. 38. But Kelora does not and cannot identify any *actual* element of the asserted claims that was not addressed by the district court. Br. 49–51 (citing "A6072-81 at ¶¶ 34-59; A7009-23, ¶ 41."). The passages cited by Kelora confirm that the district court correctly identified a client-server arrangement and resubmission as the only two differences between the claims and the AMP Navigator prior art. Kelora's brief vaguely argues that the asserted prior art is missing the "allocation of functions," Br. 50, but Kelora does not point to any specific claim limitations concerning "allocation of functions," nor does Kelora explain what is allegedly missing from any particular prior art reference. If there were actual claim limitations missing in the prior art, Kelora should have identified those limitations to the district court and this Court. It did not.

### 4. Multiple motivations to combine the prior art stand unrebutted.

In *KSR International Co. v. Teleflex Inc.*, the Supreme Court acknowledged the dangers of "hindsight bias" and encouraged district courts to set forth "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." 550 U.S. 398, 418 (2007) (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). Appellees' expert, Dr. Larson, identified at least five "rational underpinnings" demonstrating why one of ordinary skill would have

been motivated to adapt the AMP Navigator concept to a stateless client-server implementation (such as the Web) utilizing resubmission. *See* A6880–81(¶16), A6884–86(¶¶28–34), A6896–98(¶¶63–64). These "rational underpinnings" include (a) the explicit teachings of Arnett to "re-sen[d]" parameters to the server, (b) the nature of the problem that stateless servers, including Web servers, do not remember prior queries, (c) the established function of resubmission to maintain state information across multiple related queries in stateless server systems, (d) resubmission being one of a known finite number of solutions for maintaining state information, and (e) common sense. *See id.* The district court discussed most of these rational underpinnings before concluding that there was no material factual dispute as to whether there was a motivation to combine the teachings of the prior art. *See* A35:19–37:9, A40:1–41:24.

Kelora did not contest *any* of these rational underpinnings before the district court, nor has it done so in its opening brief to this Court. Indeed, Kelora's own expert, Mr. Gafford, admitted that "[m]otivation to adapt applications, in general, to the web is not contested." A6077:24. Nevertheless, Kelora argues that the court's analysis rested on hindsight: "[O]nly because statelessness is among the advantages of the reexamined claims did the district court identify solving the problem of statelessness as a motivation to combine AMP Navigator with Arnett." Br. 47–48. But Kelora cites no evidence, and fails even to acknowledge the

multiple rational underpinnings identified by Dr. Larson and the district court.

Kelora's other "teaching away" and "hindsight" arguments have been addressed

above. *Compare* Kelora Br. 36–37, *with supra* at 29–35 (the district court properly

relied upon the offer for sale as prior art); Kelora Br. 12–13, 24, 39, 41–43, 47,

*with supra* at 37–40 (Kelora's "teaching away" arguments are premised on the

Demo Software and thus legally irrelevant); Kelora Br. 15–17, *with supra* at 41–45

(Kelora's allegations regarding Arnett do not constitute "teaching away").

### 5. The district court correctly rejected Kelora's reliance on secondary considerations.

Secondary considerations of non-obviousness, such as commercial success,

are relevant only if they have a nexus to elements of the asserted patent that are not

already found in the prior art. Thus, "[i]f commercial success is due to an element

in the prior art, no nexus exists." *Tokai*, 632 F.3d at 1369–70. Kelora's only

evidence of secondary considerations was four paragraphs from a declaration by

inventor Danish. Br. 53 (citing A6059–60(¶¶2,5–7)). Nowhere in Danish's

declaration, however, does he allege, let alone set forth facts that show, a link

between any secondary considerations and the invention of the *amended* claims,

rather than the invention of the original claims which is in the prior art. A6059–

60(¶¶2,5–7). Rather, Danish speaks in general terms, referencing, for example,

"[t]he parametric search technology disclosed in the '821 Patent," A6060(¶8), or

"the methods of the '821 Patent," A6060(¶9).

The district court thus correctly held that "Kelora points to no evidence that suggests commercial success due to elements not in the prior art." A43:2–4.  Just as before the district court, Kelora fails to identify in this Court any evidence linking any secondary consideration to a specific claim element not in the prior art. Because Kelora failed to present any evidence to demonstrate the requisite nexus, the district court correctly concluded that there is no genuine issue of disputed fact to resolve.  *See, e.g.*, *Tokai*, 632 F.3d at 1370.

Kelora also criticizes the district court for failing to "even acknowledge Kelora's evidence of industry praise and copying by Microsoft."  Br. 53.  To the contrary, the district court cited Paragraphs 2–10 of Danish's declaration, A42:25–A43:4 (citing A6059–61(¶¶2–10)), which encompass *all* the evidence Kelora now cites, Br. 53.  The district court considered Kelora's evidence and then correctly held that Kelora failed to point to any evidence of a nexus to elements *not* in the prior art.  A42:28–43:4.

In the alternative, the district court held that even if it credited Kelora's evidence of commercial success, "such evidence would be insufficient to overcome the strong showing of obviousness made here."  A43:5–10 (citing *Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010) ("a highly successful product alone would not overcome the strong showing of obviousness")).  Nowhere in its opening brief does Kelora challenge that

alternative holding.  Accordingly, Kelora has waived any such challenge, and the district court's rejection of Kelora's alleged evidence of secondary considerations may be upheld for that reason alone.  *See SmithKline*, 439 F.3d at 1319 ("arguments not raised in the opening brief are waived").

## III.    The Claims Are Also Invalid Under 35 U.S.C. § 305.

Alternatively, the judgment should be affirmed because the claims are invalid under 35 U.S.C. § 305.  That issue was fully briefed, A3008:1–19:3, A6006:4–13:17, A6428:15–35:12, A6625:9–26:22, but not addressed by the district court because it held the claims were invalid as obvious, A43:22–44:6.  "A successful party in the District Court may sustain its judgment on any ground that finds support in the record."  *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957) (per curiam); *see also King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1278–79 (Fed. Cir. 2010) (affirming summary judgment of invalidity on ground advanced by defendant in summary judgment motion but not adopted by district court).

### A.    Claims That Are Broadened During Reexamination Are Invalid Under Section 305 As A Matter Of Law.

During reexamination, no amendment "*enlarging* the scope of a claim of the patent will be permitted."  35 U.S.C. § 305.  If claims are broadened, they are invalid.  *See, e.g.*, *Quantum*, 65 F.3d at 1582–84 (invalidating claims broadened during reexamination); *see also Thermalloy, Inc., v. Aavid Eng'g, Inc.*, 121 F.3d 691 (Fed. Cir. 1997) (same).

Whether a claim has been impermissibly broadened during reexamination is a matter of claim construction and thus a question of law for the Court. *See Quantum*, 65 F.3d at 1580. Under Section 305, a claim is "broader in scope than the original claims if it contains within its scope *any* conceivable apparatus or process which would not have infringed the original patent." *In re Freeman*, 30 F.3d at 1464; *accord Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1304 (Fed. Cir. 2008). Furthermore, "[a] claim that is broader in *any* respect is considered to be broader than the original claims even though it may be narrower in other respects." *In re Freeman*, 30 F.3d at 1464.

This Court has specifically rejected the argument that *adding* language to a claim necessarily *narrows* it; to the contrary, the added language can change the meaning of the claim, and thus *broaden* it, by covering an apparatus or method that could not have infringed the original claim. *See id.* at 1463, 1464–65 (holding that language added during reexamination broadened a claim by permitting the claimed lens to *sink* when originally the claim required the lens to *float*).

Finally, if an independent claim has been impermissibly broadened during reexamination (*e.g.*, claim 1 of the '821 patent), then all claims that depend from that independent claim (*e.g.*, claims 2–4) have also been impermissibly broadened and are also invalid under Section 305. *See, e.g., Anderson v. Int'l Eng'g & Mfg.,*

-51-

*Inc.*, 160 F.3d 1345, 1350 (Fed. Cir. 1998) (invalidating dependent claims along with independent claim).

**B.    The "Accepting" Step, As Properly Construed, Shows That The Asserted Claims Were Impermissibly Broadened During Reexamination.**

Kelora broadened claims 1–4 and 9 during reexamination by changing the step of "accepting a second selection criteria" from an action performed by the *user* to an action performed by the *server*. Kelora apparently made this change to try to circumvent potential "divided infringement" problems presented by the original claims. *See supra* at 16. Kelora concedes that its amendments during reexamination were designed, at least in part, to "structure[] the claims to capture infringement by a single entity: a server." Br. 54.

Reprinted below is step (h) of reexamined claims 1 and 9, with additions (as compared to original claim 1) shown by underlining and deletions shown by ~~strikethrough~~. *Compare* A203 (original claims), *with* A162 (reexamination certificate).

| Reexamined Claim 1 | Reexamined Claim 9 |
|---|---|
| (h)  accepting a second selection criteria ~~comprising~~ from the client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h)  receiving and accepting a second selection criteria ~~comprising~~ from said client computer via said computer network, in which said second selection criteria comprises (1) a resubmission by said client computer of the alternative or alternatives of the first selection criteria ~~plus~~ along with (2) at least one alternative selected from the revised feature screen, |

There is no dispute that "accepting" in step (h) of the *amended* claims is necessarily performed by the *server*. A3801:4–5, A6010:21–22. Thus, for purposes of invalidity under Section 305, the only question is whether step (h) in the *original* claims must be performed by the *user* on a client computer. If the user must perform this step in the original claims, then the amended claims are broader than the original claims because they remove the limitations concerning the user. Or, in the words of *Predicate Logic*, 544 F.3d at 1304, the amended claims are invalid because one can "imagine" a hypothetical process performed by a server that infringes amended claims 1 and 9, but not the original claim (which requires the *user* to perform the "accepting" step). *See* A6529–30.

The intrinsic evidence makes clear that the *user* must perform the "accepting" step in the original claims:

**Claim language and specification**: The term "accepting" in original claim 1 refers to a choice made by the user, not an action by a server. In particular, the user can select and deselect as many criteria (or alternatives) as the user desires. A197(7:38–43). After the user is satisfied with his choices, he *accepts* the criteria he has selected (*i.e.*, the "selection criteria") by clicking on the "search" button (208) on the *user*'s computer. A197(8:4–11). As shown in Figure 7, the "search" button 208 has a "check mark" on it, thus highlighting where the *user* must click to "accept" the criteria he has selected:



A170.  The specification confirms that the "accepting" step is performed by the

*user*:

>   Positioning the interactive pointer 39 and clicking the mouse once, toggles a radiobutton 23 or listbox entry 16 to *select* ("on") or *deselect* ("off") an alternative 6. While in the feature screen 9, <u>*the user*</u> may *select* and *deselect* turning radiobuttons 23 and listbox entries 16 "on" and "off" as desired.  In response to a <u>*user initiated signal*</u> to perform a search, the system retrieves information concerning which user selectors 16, 23 are turned "on" and to which alternatives 6 the user selectors 16, 23 that are turned "on" relate.  The alternatives 6 turned "on" are the selected alternatives 37 and constitute the selection criteria 14 used in the search to generate a subfamily 2.
>
>   . . . .

> Erasure pushbutton 206 resets all currently selected alternatives 37. . . . *Search pushbutton 208 performs a search according to the selection criteria 14.*
>
> *When the <u>user</u> initiates a search via the search pushbutton 208* or a double mouse click, the system gathers the selection criteria 14 from the user selectors 16, 23 that are toggled "on", indicating the selected alternatives 37.

A197(7:38–49, 8:1–11), A170(fig.7); *see also supra* at 6–8 (screenshots of the Demo Software embodying original claim 1, showing the *user* "accepts" by clicking on "Search" or "rejects" by clicking a second time or on "Clear All").

Kelora argued below that "accepting" essentially just means "receiving" at the server, *see* A6012:20, but the specification teaches that "receiving" the selection criteria at the server is an action that happens *after* the user performs the step of "accepting" the selection criteria (*e.g.*, by clicking on the search button to initiate a search): "The *client* 126 *initiates* a search with the modified selection criteria 14. The client 126 sends to the server 125 . . . the modified selection criteria 14. The server 125 *receives* the . . . selection criteria 14." A202–03(18:66–19:4). The claims in the grandparent patent also confirm that "accepting" and "receiving" are different steps:

> 1. A method for assisting a user in identifying a subfamily of items within a family of items, comprising the steps of: . . . (d) *accepting* at least one selected alternative, said at least one selected alternative defining a selection criteria . . . .

-55-

14. The method according to claim 1 wherein the steps of providing a computer readable data file, reading said data file, and determining said subfamily are executed on a server and wherein, the steps of displaying said feature screen, *accepting* said selected alternatives, and revising said feature screen are executed on a client and further wherein, said server is accessible by said client.

15. The method according to claim 14 and further comprising the steps of: said server *receiving* from said client a feature screen code and said selected alternatives, and said server sending to said client a feature screen status.

A3125(19:45–56, 20:52–63).  "Because [the] patents all derive from the same

parent application and share many common terms, we must interpret the claims

consistently across all asserted patents."  *NTP, Inc. v. Research In Motion, Ltd.*,

418 F.3d 1282, 1293 (Fed. Cir. 2005).

   ***Prosecution history***:  In the initial rejection of original claim 1 during the

original prosecution, the Examiner concluded that U.S. Patent No. 5,544,360 to

Lewak "teaches a system comprising the steps of . . . '*accepting*' (col. 10, lines 41–

47)."  A5618.  The cited portion of Lewak states:

The *user* initiates definition of a search filter by, for example, *clicking the mouse* on a "Set Categories" button.  The *user* then *selects* the pre-defined category descriptions for the files which the user wants to find.  In the illustrated embodiment, this is done in the same way as when categorizing a file: the *user clicks the mouse* on each applicable category description.

A5394(10:41–47).[16]  This shows that the Examiner interpreted "accepting" to mean the *user* initiates a search by clicking with his mouse.

Similarly, during reexamination, the Examiner repeatedly found that the "accepting" step was anticipated by the Granacki reference, which teaches that "[t]he *user* can restrict the list of components at any time by *selecting* an entry in any column."  A5719, A5749, A5868.  Thus, again, the Examiner interpreted "accepting" to mean an action performed by the *user*.  "Because an examiner in reexamination can be considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight."  *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 Fed. Appx. 270, 276 (Fed. Cir. Jan. 10, 2011) (nonprecedential) [A7160].

*"selection criteria"*:  In response to this showing with respect to the "accepting" step, Kelora proposed a construction for "selection criteria" to support its theory that the selection criteria in the original claims are "accepted" by the server, not by the user.  Kelora's proposed construction for "selection criteria" is: "A *signal* including one or more alternatives to be used in search operations." A3421.  Kelora's proposed construction is inconsistent with the express definition

---

[16] Because Lewak was cited during prosecution, Lewak is intrinsic evidence. "This court has established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'" *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005).

in the specification: "The current selection criteria 14 is *defined* as the set of selected alternatives . . . ." A201(15:67–16:1).  The law is clear that "the patentee must be bound by [such an] express definition" in the patent.  *Sinorgchem Co. v. ITC*, 511 F.3d 1132, 1136 (Fed. Cir. 2007).  Furthermore, Figures 8 and 28 show that item 14 (the "selection criteria") is simply the alternative(s) selected by the user — not a "signal" being sent to the server.  A171, A186.

For all of these reasons, the original claims require the "accepting" step to be performed by a user on the client computer, while the amended claims require the "accepting" step to be performed by the server, meaning that claims 1–4 and 9 were impermissibly broadened during reexamination and thus are invalid under Section 305.  *See* A6529–30.

## IV.    The District Court's Claim Constructions Are Correct.

The appealed claim constructions have no effect on the invalidity issues. *See* Br. 22, 53.  Thus, if the Court affirms the district court on invalidity, it need not reach any of the claim construction issues raised by Kelora.  *See, e.g.*, *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1368 (Fed. Cir. 2005) (refusing to consider claim construction arguments not necessary to resolve the invalidity issue before the Court); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is required only "when the meaning or scope of technical terms and words of art is unclear and in

dispute and requires resolution in order to determine" the issue before the Court). In any event, the district court correctly construed the claim terms.

## A.    The District Court Correctly Construed "Displaying."

In the prior *PartsRiver* case, the parties agreed that "displaying" means "showing on the display device of the user's computer," the same construction that the district court adopted here.  A3384, A19:27.  That construction is correct because it comports with the plain meaning of "displaying" and the intrinsic evidence.

Kelora argued below that "displaying" means "[t]he action of sending a page to a display surface or device for viewing."  A5985:1.  The district court correctly rejected Kelora's argument.  A17:6–19:27.

The plain meaning of "displaying" is not "sending."  The district court noted that "displaying" and "sending" are used throughout the specification "consistently . . . in a non-interchangeable manner."  A18:13–23.  For example, the specification explains that "the *server sends* a feature screen status," while "[t]he *client* receives the feature screen status and *displays* the feature screen accordingly."  A18:13–18 (citing A202(18:49, 18:61–63)) (numerical identifiers omitted).  The district court correctly declined to import the concept of "sending" into the term "displaying."  The court's construction — "showing on the display

device of the user's computer" — is consistent with the ordinary meaning of "displaying" and with how that term is used throughout the specification.

The portions of the specification Kelora highlights are not to the contrary. First, Kelora points to the specification's teaching that "[a]ll of the program files and data files described in the local embodiment reside on the server."  Br. 57 (quoting A202(18:13–14)).  But the specification makes clear that not *all* files are on the server; to the contrary, "the client . . . requires a Mosaic compatible browser," A202(18:31), and it is this browser on the client that performs the "displaying" step, not any of the "program files" on the server, *see* A202(18:61–63); A186(fig.28), reprinted *supra* at 15.

Second, Kelora asserts that the specification "describe[s] the act of 'displaying' by a server."  Br. 58 (citing A202(18:48–63)).  However, the only use of the word "display" in the passage Kelora cites makes clear that it is the client — not the server — that does the displaying:  "The *client* receives the feature screen status and *displays* the feature screen accordingly."  A202(18:61–63) (numerical identifiers omitted).

Kelora also points to statements in the specification about "revising," a term it deems equivalent to "displaying."  *See* Br. 59 (citing A182(fig.24); A202(17:41–18:10)).  But those statements concern the claimed step of "revising *said data* for said feature screen" (which the parties agree is a step performed by the server in

amended claim 9), not the originally claimed step of "revising *said feature screen*" (which is performed on the user's computer in all embodiments). In the figures, the "feature screen" is item 9. *See, e.g.*, A202(18:39–41) (referring to "feature screen 9"). Tellingly, Figure 24 does *not* show item 9 (the "feature screen") because Figure 24 concerns revising the *data* for the feature screen, not revising the *feature screen* itself. Item 9 (the "feature screen") is shown in Figures 7–9 and 26–29, and those figures show how the "feature screen" on the *user's computer* is revised. A170–72, A184–87, A195(4:31), A196(5:15).

Kelora argues that the district court's construction is incorrect because the patentee amended the claims during reexamination "to capture infringement by a single entity: a server." Br. 54. However, as the district court noted, the patentee never actually implemented those amendments. A19:3–11. In particular, the patentee proposed a new claim in which the "displaying" language was replaced with a step of "outputting data for a feature screen." A5784, A5786 (claims 2, 9). However, the patentee later dropped those proposed amendments and reverted to the "displaying" language. A5888.

Kelora also argues that "displaying" means "sending" because step (c) of claim 9 includes the phrase "wherein data is output to a client computer via said computer network." Br. 58. But the district court correctly held that the addition of the phrase "wherein data is output to a client computer" confirms that this

phrase is *not* inherent in the meaning of "displaying," because otherwise the addition of this phrase to step (c) would have been superfluous.  A17:12–26.

Lacking support in the intrinsic evidence for its proposed construction, Kelora relies on an alleged admission by Appellees that "[r]eexamined claims 1, 2, and 9 do not have the same divided infringement problem as original claims 1 and 2."  *See* Br. 54–55 (quoting A1729:6).  But that quote was referring to the "accepting" step, not the "displaying" step.  A1729:6–27, A1717 n.2.

**B.    The District Court Correctly Construed "Resubmission To The Server."**

The district court concluded that "resubmission to the server" in claim 1 means "resubmission by said client computer to the server."  A22:1–3.  Kelora does not propose an alternative construction for this Court to consider, but it does argue that step (h) of claim 1 does not require any action by the client computer.  Br. 60–62.

Kelora argues that Appellees admitted that "resubmission" does not require any action by the client, but the quotes Kelora cites all concern "accepting," not "resubmission."  *Compare* Br. 61 (citing A3014:21–3015:2 ("accepting")), *with* 3024:1–3025:10 ("resubmission").  As the district court reasoned — and Kelora does not dispute — the only structure that can be responsible for resubmitting information to the server is the client computer.  A21:4–28.  The Examiner reached the same conclusion when he allowed the reexamined claims:  "Amended claim 1

and new claim 9 are limited to a search query being *submitted by a <u>client</u>* computer via a network, wherein the search is performed at a server. . . . In other words, when the *client* computer of claims 1 or 9 *submits* a second query, it transmits both the previous and current selection criteria together . . . ." A5899.

## CONCLUSION

For the foregoing reasons, the judgment of invalidity of claims 1–4 and 9 of U.S. Patent No. 6,275,821 should be affirmed.

Dated:  November 5, 2012          By: /s/ Constantine L. Trela, Jr.

Constantine L. Trela, Jr.
 <ctrela@sidley.com>
Theodore W. Chandler          Richard A. Cederoth
 <tchandler@sidley.com>          <rcederoth@sidley.com>
SIDLEY AUSTIN LLP          SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000          One South Dearborn Street
Los Angeles, California  90013          Chicago, Illinois  60603
Telephone: (213) 896-6000          Telephone: (312) 853-7000
Facsimile:  (213) 896-6600          Facsimile:  (312) 853-7036

*Counsel for Plaintiffs-Appellees*
*eBay Inc. and Microsoft Corporation*

By:  /s/ Gregory P. Sitrick

Jeffrey L. Fillerup
   <jfillerup@mckennalong.com>
MCKENNA LONG & ALDRIDGE LLP
Rincon Center II
121 Spear Street, Suite 200
San Francisco, California  94105
Telephone: (415) 356-4600
Facsimile:  (415) 356-4610

Gregory P. Sitrick
   <gregory.sitrick@quarles.com>
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona  85004
Telephone: (602) 229-5200
Facsimile:  (602) 420-5198

Christopher J. Fahy
   <christopher.fahy@quarles.com>
QUARLES & BRADY LLP
300 N. LaSalle Street, Suite 4000
Chicago, Illinois  60654
Telephone: (312) 715-5107
Facsimile:  (312) 632-1752

*Counsel for Plaintiff-Appellee*
*Cabela's Inc.*

By:  /s/ Jonathan S. Franklin

Richard S. Zembek
 <rzembek@fulbright.com>
Daniel S. Leventhal
 <dleventhal@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246

Gilbert A. Greene
 <ggreene@fulbright.com>
Sheila Kadura
 <skadura@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701
Telephone: (512) 474-5201
Facsimile:  (512) 536-4598

Jonathan S. Franklin
 <jfranklin@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 662-0466
Facsimile:  (202) 662-4643

Dan D. Davison
 <ddavison@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone: (214) 855-8000
Facsimile:  (214) 855-8200

*Counsel for Defendants-Appellees
Target Corporation; Amazon.com,
Inc.; Office Depot, Inc.; Costco
Wholesale Corporation; Hewlett-
Packard Company; Audible, Inc.;
and Zappos.com, Inc.*

By:  /s/ Joseph A. Micallef

Kimball R. Anderson
 <kanderson@winston.com>
Kathleen B. Barry
 <kbarry@winston.com>
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

Joseph A. Micallef
 <jmicallef@sidley.com>
Scott M. Border
 <sborder@sidley.com>
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone: (202) 736-8000
Facsimile:  (202) 736-8711

*Counsel for Defendant-Appellee
Dell Inc.*

By: /s/ Kent E. Baldauf, Jr.

Kent E. Baldauf, Jr.
  <kbaldaufjr@webblaw.com>
Bryan P. Clark
  <bclark@webblaw.com>
Daniel H. Brean
  <dbrean@webblaw.com>
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, Pennsylvania 15222
Telephone: (412) 471-8815
Facsimile:  (412) 471-4094

*Counsel for Defendant-Appellee Newegg Inc.*

## <u>SIGNATURE ATTESTATION</u>

I hereby certify that concurrence in the filing of this document has been

obtained from each of the other signatories shown above.


Dated:  November 5, 2012                    By:  /s/ Constantine L. Trela, Jr.

*Counsel for Plaintiffs-Appellees*
*eBay Inc. and Microsoft Corporation*

## PROOF OF SERVICE

I HEREBY CERTIFY that on the date and in the place shown below, I served the foregoing documents on the persons listed below in the manner indicated below.

| Person(s) served | Manner of service |
|---|---|
| Robert D. Becker<br>    <rbecker@manatt.com><br>Ronald S. Katz<br>    <rkatz@manatt.com><br>Shawn G. Hansen<br>    <shansen@manatt.com><br>Manatt, Phelps & Phillips, LLP<br>1841 Page Mill Road, Suite 200<br>Palo Alto, California 94304<br>Telephone: (650) 812-1300<br>Facsimile:  (650) 213-0260<br><br><ManattKeloraTeam@manatt.com><br><br>*Counsel for Kelora Systems, LLC* | By the Court's CM/ECF system |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 5, 2012.

By:  /s/ Constantine L. Trela, Jr.

    Constantine L. Trela, Jr.
      <ctrela@sidley.com>
    Sidley Austin LLP
    One South Dearborn Street
    Chicago, Illinois  60603
    Telephone: (312) 853-7000
    Facsimile:  (312) 853-7036

    *Counsel for Plaintiffs-Appellees*
    *eBay Inc. and Microsoft Corporation*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because according to the word count function of the word-processing program used to prepare the brief, the brief contains 13,861 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.


Dated:  November 5, 2012               By:  /s/ Constantine L. Trela, Jr.

*Counsel for Plaintiffs-Appellees*
*eBay Inc. and Microsoft Corporation*